# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ALLEN GIBSON,**

        **Plaintiff,**

**-vs-**                                                                **Case No.  6:04-cv-1685-Orl-19DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.**     **Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on January 8, 2002. R. 15. He alleged an onset of disability on March 5, 1999, due to degenerative disc disease, headaches, post-traumatic stress disorder, leg and foot pain, and being under psychiatric care. R. 76. His application

was denied initially and upon reconsideration. R. 15. Plaintiff requested a hearing, which was held on May 5, 2004, before Administrative Law Judge Philemina M. Jones (hereinafter referred to as "ALJ"). R. 25-52. In a decision dated July 26, 2004, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 12-23. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 11. The Appeals Council denied Plaintiff's request on September 17, 2004. R. 7-9. Plaintiff filed this action for judicial review on November 17, 2004. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff was 52 years old at the time of the ALJ's decision on July 26, 2004. R. 16. He has a high school GED diploma, plus additional college studies, and past work experience as a telephone solicitor. R. 16. He was incarcerated for resisting arrest and battery on a law enforcement officer for 15 months, beginning in the fall of 2003. R. 534.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of lumbar degenerative disc disease, headaches, post-traumatic stress disorder, leg and foot pain, and the need for psychiatric care. R. 15. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from degenerative disc disease of the lumbar spine, inactive Hepatitis C infection and a bipolar disorder, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 18. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to frequently lift/carry up to 10 pounds and occasionally lift 20 pounds, sit/stand/walk six hours out of an eight hour day, frequently climb ramps/stairs, stoop, kneel, crouch and crawl and occasionally balance, but could never climb ladders, ropes or scaffolding and should avoid concentrated exposure to fumes odors, dusts, gases, poor

ventilation and hazards such as working at heights or around dangerous machinery. R. 22, Finding 5. In making this determination, the ALJ found that Plaintiff's allegations regarding his limitations were exaggerated and disproportionate to the diagnostic and clinical findings for the reasons set forth in the body of the decision.[1] R. 19. Based upon Plaintiff's RFC, the ALJ determined that he could not perform his past relevant work. R. 22, Finding 6. Considering Plaintiff's vocational profile and RFC and the testimony of the Vocational Expert, the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy. R. 21. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 22.

Plaintiff now asserts four points of error. First, he argues that the ALJ erred in failing to order additional consultative examinations. Second, he claims the ALJ erred by finding he had the RFC to perform light work contrary to his treating mental health practitioner's statements. Third, Plaintiff contends the ALJ erred by asking the VE an incomplete hypothetical that omitted certain limitations. Fourth, he asserts that the ALJ erred by improperly applying the pain standard and evaluating his credibility. All issues are addressed, although not in the order presented by Plaintiff. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits, the medical and diagnostic findings and Plaintiff's activities, including extensive travel to Philadelphia, Wisconsin, and Illinois. R. 19.

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's

impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

### A.     RFC and the treating physician's opinions.

Plaintiff claims that the ALJ should not have found him able to perform light work in light of medical records showing that Plaintiff was experiencing serious mental impairments in 2004. The Commissioner contends that the ALJ properly considered all of the medical evidence of record and properly performed her duty of assessing Plaintiff's RFC.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Based upon the medical and testimonial evidence of record, the ALJ found Plaintiff had the RFC to perform light work with the ability to frequently climb ramps and stairs, stoop, kneel, crouch, or crawl; and occasionally balance. R. 22, Finding 5. She found Plaintiff should never climb ladders, ropes, scaffolds, and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards such as working at heights and around dangerous machinery. R. 22, Finding 5. She further rejected the findings from the state agency psychologists who found no mental limitations and determined that Plaintiff has moderate difficulties in concentration, persistence, and pace and limited him to only simple repetitive tasks. R. 20, 22, Finding 5.

Plaintiff contends that the ALJ improperly determined his RFC by ignoring a December 2003 notation in the Department of Corrections Outpatient Mental Health Care[2] records which indicated Plaintiff had "poor" judgment. R. 526. The single word "poor" in the category of "judgment" in the Department of Corrections report, without any elaboration or supporting statement, is unavailing.

Plaintiff also points to recent records he submitted for mental health treatment at McLean County Center for Human Services, which indicate Plaintiff had a GAF[3] of 48 on March 22, 2004. R. 468. A GAF of 48 is described as serious symptoms (*e.g.,* suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job) Plaintiff contends that the ALJ erred in failing to discuss the weight of this evidence because poor concentration and the low GAF score indicated serious problems

---

[2]Plaintiff argued this statement was in the VA records but the citation is to R. 526, which is from Department of Corrections.

[3]Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, (DSM-IV), Chapter 22, Global Assessment of Functioning.

with concentration and social functioning, and contradict the mild restrictions determined by the ALJ. R. 20.

The Commissioner contends that, contrary to Plaintiff's assertions, the ALJ properly found Plaintiff's GAF scores ranged between 66 to 80. R. 18-19. The ALJ gave an extremely detailed and thorough description of Plaintiff's mental health treatment:

> The medical evidence of record reveals that the claimant has a history of depression and drug and alcohol abuse for which he received treatment at ACT Corporation, a mental health facility, during May and June 2002 [R. 124-37]. He was discharged from that facility on June 4, 2002, with diagnoses of dysthymic disorder and alcohol dependence [R. 124]. Following discharge, the claimant was released for further residential treatment at Serenity House until December 2002 [R 171-79]. At Serenity House, Plaintiff's objectives were to take medication as prescribed, participate in group and individual therapy, control his anger, assert himself without aggression, abstain from substance abuse, and stabilize physically and emotionally [R. 171-75]. . . .
> On August 9, 2002, Malcolm J. Graham III conducted a psychological evaluation of the claimant [R. 143-47]. The claimant stated he had abstained from substance abuse since January 2002, but admitted to use of alcohol, marijuana, and crack cocaine in the past. He also related a history of arrests up to 50 times for disorderly conduct, driving on a suspended license, assaulting a law enforcement officer, resisting arrest, and violating probation. Dr. Graham found no evidence of a depressed or anxious mood and the claimant was able to relate information in a rational, coherent, and sequential fashion. He was fully oriented and there was no evidence of concentration or memory deficits. Dr. Graham diagnosed polysubstance abuse reported in long-term remission in a structured environment and a probable anti-social personality disorder. Global Assessment of Functioning (GAF) was 65-75. . . .
>
> The claimant continued to receive mental health treatment for depression from the Daytona Beach VA and was noted to be doing well on Zoloft as of October 1, 2003. The claimant stated that "the Zoloft seems to work for the depression," but the psychiatrist observed that the claimant "appear(ed) to have difficulty with concentration." The claimant continued to receive treatment for depression from the Volusia County Department of Corrections as of October 8, 2003. . . .
>
> On November 7, 2003, the claimant had been transferred to the State of Florida, Department of Corrections. . . . On November 20, 2003, the claimant's psychiatric assessment resulted in diagnoses of a depressive disorder, not otherwise specified, and

> polysubstance dependence, in controlled environment. GAF was 80[4]. On January 7, 2004, the claimant stated that he had been off medication for a month and concluded that he did not need any medication. his condition was diagnosed was an adjustment disorder with depressed mood and an adult anti-social behavior [R. 513.] GAF was 66[5] [R. 513]. He was discharged on February 17, 2004 [R. 502]. . . On April 30, 2004, the claimant complained of sleep difficulties and related a history of depression, but denied suicidal ideation [R. 447-49].

R. 17-18. The ALJ also noted that in March 2004, Plaintiff had sought counseling for depression in Illinois. R. 19, 447-49.

There are several reasons that the ALJ could have ignored a single GAF score of 48 from the March 22, 2004 report at McClean County. First, as the Commissioner points out, Plaintiff's GAF on the date of a particular examination is simply was a reflection of his functioning on that day, and not an indication that he was disabled within the meaning of the Social Security Act. Second, Plaintiff received treatment at the McClean County facility only once (on March 22, 2004) and that single day/report is not indicative of consistent treatment; no records were received from any treatment there after that time, although the ALJ did cite mental health records from another treating source, the VA, from March and April 2004. R. 447-49. Third, the diagnosis and GAF of 48 was assigned by Barbara Gussinger, Licensed Clinical Professional Counselor, who is not an acceptable medical source. A counselor is not an acceptable medical source upon which the ALJ must rely. *See* 20 C.F.R. §§ 404.1513; 416.913(a)(2) (licensed or certified psychologists are acceptable medical sources). Fourth, the ALJ also considered the evidence from the state agency psychologists who found Plaintiff's

---

[4] A GAF score of 80 indicates if symptoms are present, they are transient and expectable reactions to psychosocial stressors; no more than slight impairment in social or occupational functioning. R. 535.

[5] According to the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, (DSM-IV), a GAF of 66 indicates mild symptoms or some difficulty in social or occupational functioning but generally functioning pretty well with some meaningful interpersonal relationships (Tr. 18, 146).

mental disorders resulted in no limitations of function. R. 20, 156-70. The ALJ's determination was supported by substantial evidence.

### B.     Development of the record

Plaintiff contends that the ALJ did not make an informed decision about the extent of Plaintiff's physical and mental problems by failing to order an updated clinical evaluation when he testified that his health deteriorated between 2002 and 2004. The Commissioner contends that the record contained sufficient evidence and no consultative examination was needed.

The ALJ has a duty to fully and fairly develop the record. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. *See Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997). In this case, Plaintiff was represented by counsel, and the duty did not rise to such a high level.

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917. In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).

Plaintiff baldly asserts that the two-year gap between from the time of Plaintiff's consultative examinations until his hearing "would certainly warrant updated examinations in order for the ALJ to make an informed decision." Plaintiff was seen for a medical consultative examination in July

2002 and a psychological consultative examination in August 2002. R. 138-42; 143-47. Plaintiff's hearing was held in May 2004. R. 25-52. Plaintiff contends that because Plaintiff was diagnosed with "degenerative" disc disease, his condition deteriorated over time and warranted updated consultative examinations. He also relies on his testimony at the hearing that his mental health condition deteriorated. R. 41-43.

The Commissioner correctly points out that further consultative examinations are only needed when additional information is required to render a decision and the necessary information is not in the record and cannot be obtained from treating or other medical sources. See 20 C.F.R. §§ 416.917, 416.919, 416.919a(a) (setting forth situations normally requiring a consultative examination). The ALJ had in front of her, and cited, an abundance of physical and mental health treatment records from 2003 and early 2004 (prior to the hearing).

For example, in VA treatment notes from March 2003, Plaintiff reported his pain syndrome was better, the pain had decreased and he was sleeping better. R. 197, 202. Treatment notes from July 21, 2003 at the VA demonstrate that Plaintiff's pain on full extension of his legs was questionable, as was tingling sometimes in his right leg. R. 433. On March 29, 2004, Plaintiff's treating physicians at the VA (Dr. Peaslee), reviewed the MRI from 2000 showing a L2-L3 disk bulge and noted there was "no utility in repeating at this time but can consider in future." R. 457. At the same visit, Plaintiff reported his history of depression, but reported primarily having "difficulty now with sleeping," but denied any suicidal ideation. R. 456. Plaintiff also had a long history at the VA of drug-seeking behavior, which damaged his credibility with the physicians in terms of convincing them of his back pain. *See* R. 208 (narcotic seeking behavior); 289 (requesting Percocet; long discussion on addiction and need to avoid alcohol); 296 (consistently seeking pain prescriptions

-10-

early); 297 (patient has history of alcohol abuse and is constantly seeking pain medications early; doctor not comfortable with continuing pain med without evaluation by pain clinic); 304 (based on reports showing no evidence of left or right lumbar or sacral radiculopathy, the doctor was concerned that patient was there early for prescription; "some other method other than narcotics for managing pain [should] be attempted"); 315 (when Plaintiff supposedly lost medications, VA refused to prescribe extra). The record in this case contained sufficient evidence for the ALJ to make an informed decision and no new consultative examination was needed.

### C.    Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating his subject complaints of pain due to degenerative disc disease and bipolar disorder, conditions which would cause the pain, discomfort and limitations Plaintiff described. R. 16. He contends that he provided uncontradicted evidence of an underlying medical condition accompanied by objective medical evidence confirming the severity of the alleged pain and limitations. The Commissioner contends that the ALJ properly found Plaintiff's subjective complaints were beyond what would reasonably be expected in terms of intensity, duration, and frequency based on the clinical findings. R. 19.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, she clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 19. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. She obviously determined that Plaintiff had an objective medical condition that could give

-11-

rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that she had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that she had to articulate a reasonable basis for her determination. In that respect, immediately after discussing the guidelines for determining Plaintiff's RFC, the ALJ stated:

> Considering the claimant's testimony versus the medical evidence in the case record, the undersigned finds that testimony somewhat exaggerated and disproportionate to the diagnostic and clinical findings. The claimant alleged severe back and right leg pain and numbness so severe that he is able to lift only 5 to 10 pounds, sit or stand only about 15 minutes at a time, and walk only two blocks, but radiographic evidence has shown only some disc bulging at L2-L3. Further, claimant admitted that following his release from jail, he was able to travel to Philadelphia, Wisconsin, and Illinois. The claimant also alleged that he has severe mental problems, but the record shows that his condition has generally been controlled with medication once he finally gave up his substance addiction. In fact, Florida Department of Corrections' records in January 2004 reflect that the claimant concluded that he did not need any medication and his mental status reflected that he was not significantly depressed. He was diagnosed only with an adjustment disorder with depressed mood and adult anti-social behavior. GAF was 66. Earlier, a psychiatrist at the VA observed in October 2003 that Zoloft was working for the claimant and he noted only some concentration difficulties. The claimant sought counseling for depression in Illinois in March 2004, but in April 2004, he was able to meet the requirements for a driver's license in Wisconsin. Thus, when considering the definitive laboratory and clinical findings, the claimant's subjective complaints are beyond what would reasonably be expected in terms of intensity, duration, or frequency.

R. 19.

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly

articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff contends that the ALJ erred in relying on Plaintiff's 2002 MRI which showed only minimal findings because the report was two years old. Plaintiff again baldly asserts that his condition, because it is labeled as "degenerative" disc disease *could* have deteriorated since that time. There is no evidence that it did; in fact, Plaintiff's physicians did not believe that it had. *See* R. 457 Plaintiff's treating physicians at the VA reviewed the MRI from 2000 showing a L2-L3 disk bulge and noted there was "no utility in repeating at this time but can consider in future." R. 457 (March 29, 2004).

Moreover, Plaintiff admitted that following his release from jail, he was able to travel to Philadelphia, Wisconsin, and Illinois, which are a significant driving distance from Florida. R. 30-32. He also testified that he obtained a Wisconsin driver's license in April 16, 2004, and then drove from Wisconsin to Georgia, and he went to Florida by bus after his car broke down in Georgia, in order to appear at his hearing. R. 32. He also admitted that he continued to work after the alleged onset of disability; he engaged in substantial gainful activity through December 2001. R. 16. He worked again for a two-month period in 2003, and again for three weeks in Wisconsin three weeks before the hearing. R. 16. Plaintiff also testified that his depression interfered with his job performance and led to his getting fired (R. 42); however, based on Plaintiff's reports to VA providers, he was jailed on at least two occasions in late 2001-03 before being arrested in fall 2003 and incarcerated for fifteen months. R. 275, 289, 324.

Plaintiff also contends that the ALJ should not have discredited Plaintiff's testimony regarding the severity of his mental health problems because the medical records show he had a GAF score of

48 (indicating serious symptoms), had Plaintiff had poor judgment, anger problems, and was paranoid. R. 467-478, 526. The Court has already addressed the ALJ's proper rejecting of those reports as they relate to Plaintiff's overall mental health. Plaintiff also points to his testimony that he has attempted suicide several times, and while the medical records reflect reports of his previous attempts, these attempts were at least ten years old. Plaintiff attempted suicide when he thought he would be jailed in 1979 and again in 1993 when his girlfriend was murdered. R. 375, 516, 535. He reported making other attempts, even as recently as 2001, but without any support in the medical records other than his self-report. R. 466. In fact, the medical records from 2003 and early 2004 contradict his reports of suicidal ideation and report that his medications were working. R. 488, 499 (no suicidal behavior in last year - March 1, 2004); 507 (not depressed right now; denied suicidal ideation - February 2, 2004). He told the Department of Corrections psychologist on January 7, 2004 that he "OD'ed twice, but that's over with" and "I'm doing good here so far." R. 513. As the Commissioner points out, Plaintiff alleged severe mental problems, but records show that this condition was generally controlled with medication once he finally gave up his substance addictions. R. 19, 41, 488, 513. In January 2004, the Florida Department of Corrections concluded that Plaintiff did not need any medication, and he was diagnosed with an adjustment disorder with depressed mood, and adult antisocial behavior with a GAF score of 66, reflecting only mild symptoms. R. 513.

In October 2003, a VA psychiatrist noted that Zoloft was working, and Plaintiff suffered only some concentration difficulties. R. 488. The ALJ rejected the findings from the state agency psychologists who found no mental limitations, finding that Plaintiff had moderate difficulties in concentration, persistence, and pace and, thus, limited him to only simple repetitive tasks. R. 20, 22, Finding 5.

-14-

The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints. The ALJ's reasons included inconsistencies between his testimony and the clinical and diagnostic findings, as well as inconsistencies between his statements and his activities of daily living, including travel to three states a considerable driving distance from Florida by car and bus and qualifying/obtaining a driver's license in Illinois. These are factors the ALJ is directed to consider and the ALJ's reasons are supported by substantial evidence. 20 C.F.R. §§ 404.1529; 416.929.

### D. Hypothetical Question

Plaintiff contends that the ALJ erred in proposing an incomplete hypothetical to the VE. The Commissioner contends that the ALJ's hypothetical contained Plaintiff's limitations and the ALJ properly relied on the testimony of the VE.

The case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

At the hearing, the ALJ asked the following hypothetical to the VE:

I am going to assume a hypothetical individual who is 52 years of age and has past relevant work as described. Plaintiff can lift 20 pounds occasionally, 10 pounds frequently, could sit/stand/walk 6 hours of an 8 hour day, could frequently climb ramps and stairs, stoop, kneel, crouch and crawl and occasionally balance. Her should never climb ladders, ropes or scaffolds and is to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation and hazards. Would he be able to perform and of his past relevant work or other work?

R. 49. The VE testified in response that relying upon the restrictions imposed by this hypothetical, Plaintiff would be able to perform other work in that national economy as a fast food worker, buffet waiter, hotel housekeeper, assembler of parts, and a cashier. R. 50-51.

Plaintiff contends that the hypothetical was incomplete because the ALJ failed to include the mental limitations of "moderate difficulties in concentration, persistence or pace" which were included in the ALJ's decision, but were not in the hypothetical. R. 20. The Commissioner contends that the ALJ need not include the medical diagnoses of "moderate difficulties in concentration, persistence, and pace" because the ALJ is not required to include in the hypothetical question references to a claimant's diagnoses or impairments, but need only include the functional restrictions that result, *i.e.*, Plaintiff was limited to simple, repetitive tasks. *See, e.g., Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 247 (6th Cir. 1987) (it is the ALJ's function to first determine what medical restrictions claimant is under and how they affected his residual functional capacity, and then determine whether the vocational expert had identified a significant number of jobs in the relevant market given these restrictions)

In the present case, the ALJ properly found Plaintiff had moderate difficulties in concentration, persistence, and pace and, therefore, restricted him to simple, repetitive tasks. R. 20. The ALJ, in posing the hypothetical question to the VE, properly included the limitation that Plaintiff could perform only simple, repetitive tasks. R. 50. The Court finds that it was not necessary for the ALJ to also include the diagnostic limitation of moderate difficulties in concentration, persistence, and pace. The ALJ's hypothetical question included Plaintiff's functional mental and physical limitations supported in the record and the VE properly identified jobs Plaintiff can perform. R. 50-51. The ALJ was entitled to rely on the VE's testimony that jobs Plaintiff could perform existed in significant

numbers in the economy. R. 50-51. The ALJ's hypothetical was complete and her decision that Plaintiff can perform work in the national economy is supported by substantial evidence.

**IV.  CONCLUSION**

The ALJ appropriately considered Plaintiff's circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 27, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record